UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

:

SOLOMON CLANTON p/k/a SLUGGA, an individual,   :

:

Plaintiff,   :

:                    20-cv-5841 (LJL)

-v-   :

:                    OPINION AND ORDER

UMG RECORDINGS, INC., a Delaware corporation;   :
GAMEBREAD, LLC, a limited liability company;   :
TAUHEED EPPS p/k/a 2CHAINZ, an individual;   :
KENNON JACKSON p/k/a YG, an individual; KIARI   :
CEPHUS p/k/a OFFSET, an individual, TYLER   :
MATTHEW CARL WILLIAMS p/k/a T-MINUS, an   :
individual; JOSH VALLE, an individual; MATTHEW   :
JEHU SAMUELS, an individual; and DOES 1   :
THROUGH 20,   :

:

Defendants.   :

:

------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants UMG Recordings, Inc., Gamebread, LLC, Tauheed Epps, known

professionally as "2Chainz" ("2Chainz"), and Kiari Cephus, professionally known as "Offset"

("Offset"), move to dismiss Plaintiff Solomon Clanton's complaint. For the following reasons,

the motion to dismiss is granted.

## BACKGROUND

Solomon Clanton, professionally known as "Slugga" ("Slugga" or "Plaintiff") is a

hip-hop artist. Dkt. No. 18 at 1. In 2015, Slugga recorded and released a musical composition

and sound recording entitled "Proud" (the "Subject Composition"). The Subject Composition is

available online and on social media. *Id.* ¶ 16. Slugga included the Subject Composition as part

of his mixtape "Metamorphosis: From Forces to Red Bottoms" (the "Mixtape"), which was

published on the website datpiff.com in 2015. *Id.* ¶ 17. The Mixtape was published on several

other hip-hop music sites in 2015.  *Id.* ¶ 18.  The Subject Composition was published on YouTube as early as April 2017 and on the music site worldstarhiphop.com as early as April 2017.  *Id.* ¶ 19.  Slugga registered the recording of the Subject Composition with the United States Copyright Office on July 21, 2021, with Registration Number SR 875-198.  *Id.* ¶ 15.

At some time no later than March 2018, 2Chainz, a well-known hip-hop artist, began publicly performing a song entitled "Proud" ("2Chainz's Composition"), which was released on his album "The Play Don't Care Who Makes It."  *Id.* ¶ 21.  2Chainz's Composition was authored by 2Chainz and Offset, along with Defendants Josh Valle, Kennon Jackson, Kiari Cephus, Matthew Jehu Samuels and Matthew Carl Williams.  *Id.* ¶ 22.  The complaint alleges that: "Without limiting the access and knowledge of other Defendants, Slugga is informed and believes and thereon alleges that, at all relevant times, 2Chainz, Jackson, Valle and their agents were specifically aware of "Proud" [i.e., the Subject Composition]."  *Id.* ¶ 20.  The complaint further alleges, on information and belief, that "Defendants, and each of them, had access to the Subject Composition including, without limitation, through (a) listening to the recording via Slugga's public performances or recordings, (b) streaming the Subject Composition online, and (c) listening to the Subject Composition through a third party."  *Id.* ¶ 38.

Plaintiff alleges that the Subject Composition and 2Chainz's Composition share the following similarities:

- The notes and rhythm of the principal hook are identical.  The lyrics of the principal hook in the Subject Composition are "Proud, I'm just tryin' to make my ma-ma proud."  The

lyrics of the principal hook in 2Chainz's Composition are "Yeah, I'm just try-na make my ma-ma proud." *Id*. ¶¶ 23-24.

- Both songs use call-and-response techniques and have a 2/4 time signature. *Id*. ¶ 24.
- The music videos for both songs use a media clip and a spoken word introduction. *Id*. ¶ 25.
- Both works open with a sustained note or chord played by an organ. *Id*. ¶ 26.

According to Plaintiff, these similarities "demonstrate that portions of [2Chainz's Composition] were copied wholesale from the Subject Composition." *Id*. ¶ 27.

Since 2018, 2Chainz's Composition has been performed, sold, played, and streamed on many platforms. *Id*. ¶ 28. In October 2019, Slugga sent UMG a cease and desist letter demanding that Defendants stop infringing the Subject Composition. *Id*. ¶ 29. Defendants did not respond to the letter. *Id*.[1]

## PROCEDURAL HISTORY

Plaintiff initiated this action by complaint filed July 28, 2020. Dkt. No. 1. Plaintiff filed an amended complaint on October 8, 2020. Dkt. No. 18. Defendants UMG Recordings, Gamebread, and 2Chainz filed this motion to dismiss on November 6, 2020. Dkt. No. 25. Defendant Kiari Cephus joined the motion to dismiss by notice dated December 7, 2020. Dkt. No. 32. Plaintiff filed a brief in opposition to the motion to dismiss on December 11, 2020, Dkt. No. 33, and Defendants replied on January 15, 2021. Dkt. No. 36.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[1] Plaintiff raises factual allegations not mentioned in the complaint in his brief in opposition to the motion to dismiss. Because a plaintiff cannot raise allegations not raised in its complaint in a brief in opposition to a motion to dismiss, the Court does not take notice of these allegations. *See Cal Distrib., Inc. v. Cadbury Schweppes Ams. Beverages, Inc.*, 2007 WL 54534, at *6 ("[I]t is axiomatic that [a] [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss." (quoting *O'Brien v. Nat'l Property Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989))).

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *accord Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  For the purposes of this motion, the Court assumes that Clanton owns a valid copyright in the Subject Composition, as pleaded in the complaint.  Accordingly, ownership and validity are not at issue on this motion.  In order to establish that a defendant copied constituent elements of an original work, a plaintiff must establish that: "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Knitwave, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995).

Defendants argue that the complaint must be dismissed for two reasons.  First, Plaintiff has failed to plausibly allege that Defendants had access to his song.  Dkt. No. 26 at 7.  Second,

Plaintiff fails to allege any actionable similarities between the songs. *Id*. The Court addresses the two arguments in turn.

## I.    Access

Actual copying can be shown through either (1) direct evidence of copying or (2) circumstantial evidence that the defendants had access to the plaintiff's work. *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003). Such circumstantial evidence can be demonstrated through either (1) "a particular chain of events . . . by which the defendant might have gained access to the work," *Tomasini v. Walt Disney Co.*, 84 F. Supp. 2d 516, 519 (S.D.N.Y. 2000) (internal citation omitted); or (2) facts showing "that plaintiff's work was 'widely disseminated,'" such that access can be inferred, *Webb v. Stallone*, 910 F. Supp. 2d 681, 686 (S.D.N.Y. 2012) (citations omitted), *aff'd on other grounds*, 555 F. App'x 31 (2d Cir. 2014).

"A work is 'widely disseminated' when it has had 'considerable commercial success' or is 'readily available on the market.'" *Stallone*, 910 F. Supp. 2d at 686 (quoting *Silberstein v. Fox Entm't Grp.*, 424 F. Supp. 2d 616, 627 (S.D.N.Y. 2004)). Access can be inferred where "a party had a reasonable possibility of viewing the prior work." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 270 (2d Cir. 2001). "'A reasonable possibility' is not simply a 'bare possibility'; 'access cannot be based on mere speculation or conjecture.'" *Muller v. Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 440 (S.D.N.Y. 2011) (quoting *Jorgensen*, 351 F.3d at 51).

Plaintiff argues that his work was widely disseminated enough that Defendants' access to the Subject Composition can be inferred. Plaintiff has failed to support this allegation. Plaintiff alleges no facts supporting his argument that the Subject Composition was widely disseminated beyond the bare facts that it was on a mixtape that was posted to several hip-hop websites and that the Subject Composition was posted on YouTube, and the vague and conclusory claim that

the Subject Composition "has been widely shared and listened to online and on social media." Dkt. No. 18 at 16.

As a matter of law, the fact that the Subject Composition was posted on the internet is insufficient on its own to show "wide dissemination."  *See O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 515 (S.D.N.Y. 2008) ("[T]he mere fact that [the plaintiff's] work was posted on the internet prior to the creation of defendants' work is insufficient by itself to demonstrate wide dissemination."); *Hayes v. Minaj*, 2012 WL 12887393, at *3 (C.D. Cal. Dec. 18, 2012) (dismissing complaint because "[t]he fact that the video was placed on YouTube does not imply it was disseminated widely . . . ").  Were it otherwise, any work that any person uploaded publicly to the internet would have to be considered sufficiently "widely disseminated" to give rise to an inference that every person had heard it—an inference that would be plainly unreasonable.  Plaintiff has made no specific allegations about how many times the song was accessed on YouTube or on the specialty hip-hop websites to which the Mixtape was uploaded or the general time periods during which it was accessed.  The conclusory claim that the Subject Composition was "widely shared" is insufficient to meet Plaintiff's burden to show considerable commercial success.  In the absence of specific facts showing that the Subject Composition was widely accessed on the internet before publication of the allegedly infringing work, *cf. Smart Study Co. v. A Pleasant Trip Store*, 2020 WL 2227016, at *5 (S.D.N.Y. May 7, 2020) (finding a likelihood of success on a claim of wide dissemination where

a video had over 3.1 billion views on YouTube), Plaintiff's complaint fails to adequately state a claim.[2]

The cases cited by Plaintiff in support of its argument that the Subject Work was widely disseminated reinforce the conclusion that Plaintiff's complaint is insufficient.  In *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988 (2d Cir. 1983), access was inferred where a song was on the popular music charts for weeks.  In *Arnstein v. Porter*, 154 F.2d 464, 469 (2d Cir. 1946), the court inferred access where "more than a million copies of one of [plaintiff's] compositions were sold; copies of others were sold in smaller quantities or distributed to radio stations or band leaders or publishers, or the pieces were publicly performed."  And in *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 988 F. Supp. 289, 293 (S.D.N.Y. 1997), a court in this District drew an inference of wide dissemination where the allegedly infringed song was a top-five country hit at the time of the alleged infringement.  Plaintiff's allegations do not come close to the allegations of these cases.  Plaintiff has not alleged that the Subject Work was ever played on the radio, much less that it was a hit.  Nor has Plaintiff alleged the number of listens that the Subject Work received on the hip-hop sites to which it was uploaded, or the number of views it

---

[2] In his brief in opposition to the motion to dismiss, Slugga claims that the Subject Composition "had over 106,000 views on WorldStarHipHop.com, 49,000 views on YouTube, and over 7,000 views on LiveMixTapes.com as of November 30th, 2020." Dkt. No. 33 at 5.  Even if the Court could take judicial notice of these claims, the number of views as of November 2020 is not probative of anything related to this case.  2Chainz began performing his composition no later than March 2018, and accordingly, the total number of views over two years later has no bearing on whether the Subject Composition was widely disseminated at the time of the alleged infringement.

received on YouTube at any relevant time.  Plaintiff has not alleged enough for the Court to infer access on the basis of widespread dissemination.

Plaintiff argues that, at the pleading stage, he is not required to prove that any Defendants actually listened to the Subject Composition and "it is enough to prove that the infringer (or his intermediary) had the mere opportunity to see the work." *Jorgensen*, 351 F.3d at 54-55.  But this language, drawn from a citation to the Fourth Circuit's decision in *Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 305, 354-55 (4th Cir. 2001) in the Second Circuit's decision in *Jorgenson*, is misleadingly quoted out of context.  In *Jorgenson*, the plaintiff—who was a singer-songwriter— mass mailed copies of his songs to a "multitude" of record companies.  *Id*. at 49.  He alleged that recording artists at two of those companies subsequently infringed on his copyrights by incorporating elements of his songs into their own songs.  *Id*.  Executives at one of the two companies admitted in depositions that they received the plaintiff's submissions, *id*. at 52, and the plaintiff testified that he had several conversations with one of the executives over the course of several years, *id*. at 50.  The Second Circuit held that the plaintiff had shown a "reasonable possibility of access" by the alleged infringer, because he had shown "a clear nexus" between the executive who had admitted receiving the recording and the record company's A&R department. *Id*. at 45.

*Jorgensen* is inapposite to the facts of this case, because the plaintiff there sought to prove actual copying by alleging a "chain of events" through which the defendant gained access to his works, rather than by alleging that his works were widely disseminated.  The plaintiff in *Jorgensen* put forth a specific and well-supported theory of how his recording came into the possession of the writers of the allegedly infringing songs.  The language from *Jorgensen* stating that all a plaintiff must show is that the defendant "had the mere opportunity to see the work"

8

applies only when the plaintiff has plausibly alleged a chain of events through which his work was accessed by the defendant.  The mere posting of the work on the internet is not sufficient to plead such a chain of events.[3]

Alternatively, Plaintiff argues that the Subject Composition and 2Chainz's Composition are so "strikingly similar" that the Court should permit the case to go forward, even in the absence of a finding of access.  "To prove that similarities are striking, claimant must demonstrate that such similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source."  *Stratchborneo v. Arc Music Corp.*, 357 F. Supp. 1393, 1403 (S.D.N.Y. 1973); *see also Jorgenson*, 351 F.3d at 56 ("[W]here the works in question are 'so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access.'" (citing *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995))); *Cox v. Abrams*, 1997 WL 251532, at *5 (S.D.N.Y. May 14, 1997) ("[S]triking similarity exists when two works are so nearly alike that the only reasonable explanation for such a great degree of similarity is that the later . . . was copied from the first."); 4 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 13.02 (2021) ("At base, 'striking similarity' simply means that, in human experience, it is virtually impossible that the two works could have been independently created.").  The striking similarity test "is applied with particular

---

[3] *Bouchat*, from which the language in *Jorgensen* derives, arose out of a similar fact pattern.  The plaintiff was an amateur artist who faxed copies of potential logos for the Baltimore Ravens to the chairman of the Maryland Stadium Authority.  Shortly thereafter, the Ravens unveiled their logo, which was substantially similar to the drawings the plaintiff had faxed to the Ravens' offices.  Because the plaintiff had put forward a "chain of transmittals [which was] far more than hypothetical," the Fourth Circuit affirmed the district court's decision to deny defendant's motion for judgment as a matter of law.

stringency in cases . . . involving popular music." *Tisi v. Patrick*, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000).

The similarities between the two compositions are not sufficiently striking to overcome the access requirement.  The principal similarity between the two songs is the use of the expression "I'm just tryin' to make my mama proud," spoken in approximately the same cadence, in the chorus of each of the two compositions.  The two compositions share no other lyrics, and the only other similarities cited by Plaintiff are the vague facts that both use call-and-response, have a 2/4 time signature, and begin with a sustained note or chord played by an organ.  A 2/4 signature and organ instrumentation are common to music.  No inference can be drawn that Defendants had access to Plaintiff's composition because they both used a 2/4 time signature and an organ.  *Cf. Boone v. Jackson*, 206 F. App'x 30, 32 (2d Cir. 2006) (finding no probative similarity between two songs where "the call and response applied only generically to the two songs and was executed in defendants' song 'in a different way and to varying degrees'").  Thus, the similarities between the compositions are not sufficient to establish that there is no possibility that the works were composed independently, and accordingly there can be no "striking similarity."  *See, e.g.*, *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1034-35 (5th Cir. 2015) (holding that the fact that two Tejano songs began with the words "Yo tengo en mi poder unas cartas de amor que tu me las mandastes pidiendo compassion" failed to establish striking similarity).

## II.     Actionable Similarities

In order to show that a defendant unlawfully copied a plaintiff's work, the plaintiff must demonstrate that "a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2012) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)).  "[O]nly the

protectable portions of the copyrighted works are compared for substantial similarity." *Estates of Smith v. Cash Money Records, Inc.*, 253 F. Supp. 3d 737, 747 (S.D.N.Y. 2017). "Where works 'have both protectible and unprotectible elements [the] analysis must be more discerning and . . . [courts] must attempt to extract the unprotectible elements from . . . consideration and ask whether the protectible elements, standing alone, are substantially similar.'" *Id.* (quoting *Peter F. Gaito*, 602 F.3d at 66).

"The *sine qua non* of copyright is originality." *Feist Publ'ns*, 499 U.S. at 345-46; *see also* 17 U.S.C. § 102(a) ("Copyright protection subsists . . . in original works of authorship."). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.*; *see also Luck's Music Library, Inc. v. Ashcroft*, 321 F. Supp. 2d 107, 118 (D.D.C. 2004) ("Originality merely requires independent creation by the author and just a scintilla of creativity."). "To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice." *Id.*; *see also Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) ("[T]he amount of creative input by the author required to meet the originality standard is low, [but] it is not negligible."). "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying. To illustrate, assume that two poets, each ignorant of the other, compose identical poems. Neither work is novel, yet both are original and, hence, copyrightable." *Id.*; *see also Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936), *aff'd*, 309 U.S. 390 (1940) ("[I]f by some magic a man who had never known it were to compose anew Keats' Ode On a Grecian Urn, he would be an 'author,' and, if he copyrighted it, others might not copy that poem, though they might of course copy Keats."). "Creativity" does not "mean an 'inventive

leap' or 'new idea' in the sense of never having been conceived before.  Instead, it refers to

matter bearing a spark of distinctiveness in *copyrightable expression*."  Nimmer, *supra*, § 2.01.

"The test for infringement of a copyright is of necessity vague."  *Peter Pan Fabrics, Inc.*

*v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960).  "[B]ecause the question of

substantial similarity typically presents an extremely close question of fact, questions of

non-infringement have traditionally been reserved for the trier of fact."  *Peter F. Gaito*, 602 F.3d

at 63.  However, "it is entirely appropriate for a district court to resolve that question as a matter

of law, 'either because the similarity between the two works concerns only non-copyrightable

elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find

that the two works are substantially similar.'"  *Id.* (quoting *Warner Bros. Inc. v. Am. Broad.*

*Cos.*, 720 F.2d 231, 240 (2d Cir. 1983)).  "When evaluating substantial similarity on a motion to

dismiss, no discovery or fact-finding is typically necessary, because what is required is only a

visual or aural comparison of the works."  *McDonald v. West*, 138 F. Supp. 3d 448, 454

(S.D.N.Y. 2015).  "Courts in this district regularly apply this rule in music copyright cases to

listen to the songs at issue when evaluating a motion to dismiss."  *Id.* at 453.

"Words and short phrases, including titles and slogans, rarely if ever exhibit sufficient

originality to warrant copyright protection."  *West*, 138 F. Supp. 3d at 454 (citing *Bell v. Blaze*

*Magazine*, 2001 WL 262718, at *2 (S.D.N.Y. Mar. 16, 2001)).  "Longer phrases are also not

protectable if they are common or cliché."  *Id.*; *see also* 37 C.F.R. § 202.1(a) ("Words and short

phrases such as names, titles, and slogans" are not subject to copyright).  Phrases that "enjoy[] a

robust existence in the public domain" are not protectible.  *Acuff-Rose Music*, 155 F.3d at 144.

"The principle excludes from copyright the 'raw materials' of art, like colors, letters, descriptive

facts . . . as well as previous creative works that have fallen into the public domain.  It likewise

12

excludes the basic building blocks of music, including tempo and individual notes." *West*, 138 F. Supp. 3d at 454.

The question before the Court is whether the expression "I'm tryna make my momma proud" possesses the requisite "minimal degree of creativity," or "scintilla of creativity" to be "original" and correspondingly protectable as a matter of law. The Court concludes that it is not.

The sentiment of trying to look good in the eyes of one's parents or to make them pleased—a notion common enough to human relations as well as to art and literature for millenia, *see, e.g.*, Proverbs 10:1 ("A wise son maketh a glad father"); William Shakespeare, *Coriolanus* act 1, sc. 1, l. 36-38 ("Though soft-conscienced men can be content to say it was for his country, he did it to please his mother . . ."); F. Marryat, Percival Keene, I. xvii. 268 (1842) ("That's the way to go to a parent's heart: make him feel proud of you.")—is of course not protectable. Copyright does not protect ideas or themes. *See Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48-49 (2d Cir. 1986); *Hoehling v. Universal City Studios, Inc.*, 618 F/2d 972, 979 (2d Cir. 1980); *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery."). Slugga does not have a protectible interest in the concept of familial love or pride or the efforts to instill it.

The manner in which that sentiment or concept is expressed in the Subject Composition, moreover, is wholly conventional. The words "I'm just tryna make my momma proud" use the ordinary building blocks of the English language in a functional manner to express the unprotectible idea. *See CMM Cable Rep, Inc v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1519 ("It is axiomatic that copyright law denies protection to 'fragmentary words and phrases' and to

'forms of expression dictated solely at function considerations' on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection." (quoting Nimmer, *supra*, § 2.01[B])).  The words employed are those in wide circulation in the English language the public domain.  "Momma" is, by this time, a conventional slang form of the word "mother," *see* Oxford English Dictionary, *Momma*, "tryna" is a simple common contraction of "trying to," Merriam Webster Dictionary, *Tryna*, and there are few synonyms that express the concept of proud—the idea of feeling deep pleasure or satisfaction as a result of the achievements of oneself or another.  *See* Oxford English Dictionary, *Proud* ("Feeling greatly honoured, pleased, or satisfied by something which or someone who does one credit.").  There is no poetic diction to the expression; no metaphor, simile, or other form of figurative language, no use of rhetorical style; and no use of the language in any unexpected or unconventional way.  Nor is there anything original in the use of the words; the Subject Composition uses the words in the order suggested by the common English rules of grammar. *Cf. Heim v. Universal Pictures Co.*, 154 F.2d 480, 487 n.8 (2d Cir. 1946) ("There may be wrongful copying, though small quantitatively; so if someone were to copy the words, 'Euclid alone has looked on Beauty bare,' or 'Twas brillig and the slithy toves.'").  The expression merely expresses in a few words a commonplace sentiment in a commonplace manner using the building blocks provided by the English language in a functional manner to convey an idea. Accordingly, the phrase does not have the requisite scintilla or spark of creativity needed to be copyrightable.

This holding is in accordance with other cases that have considered the question whether a short lyric is protectible under the Copyright Act.  In *Puckett v. Hernandez*, 2016 WL 7647555,

at *5 (C.D. Cal. Dec. 21, 2016), the court determined that the lyrics "I would die for you baby"

and "You won't do the same" were not protectable:

> [T]hose lines are common phrases that do not possess the requisite originality to be copyrightable. Saying 'I would die for you' is a common way of emphasizing the extreme lengths to which one would go for another person, and it used in countless movies and songs, not to mention everyday conversations. The phrase 'You won't do the same' is so common that it hardly requires explanation. Neither of these phrases possesses the requisite originality or uniqueness to qualify for copyright protection.

*Id.* Because the lines expressed a common sentiment in a common way, the case was dismissed

as a matter of law. Similarly, in *Johnson v. Gordon*, 409 F.3d 12, 24 (1st Cir. 2005), the First

Circuit concluded, at the summary judgment phase, that the phrase "You're the One for Me"

could not be copyrighted. *See id.* ("It is . . . readily apparent that this lyric is too trite to warrant

copyright protection."); *see also Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 207

(S.D.N.Y. 2019) (finding that the use of the term "walk it like I talk it" was not copyrightable, because the phrase was in common use").[4]

Plaintiff relies upon *May v. Sony Music Entertainment*, 399 F. Supp. 3d 169 (S.D.N.Y. 2019) in support of his argument that the phrase "I'm just tryna make my momma proud" is protectible.  In *May*, a court in this District concluded that the expression "we rule girl, girl no rule we" was not unprotectable as a matter of law at the motion to dismiss phase.  *Id*. at 184-85. But the expression at issue there was very different from the expression here.  The phrase was an adaption and Anglicization of a pre-existing Jamaican saying "Wi run tings. Tings nuh run wi." *Id*. at 183.  The court concluded that the phrase was distinguishable from a "pre-existing saying" that would not be protectible because, viewed in the light most favorable to the plaintiff, the phrase was a creative combination of "the Jamaican Patois dialect and uniquely and creatively mix[ed] . . . with the English language."  *Id*.  The author adapted a traditional phrase and mingled two languages to create a distinctive expression.  The case thus differs from this case, where

---

[4] In support of their argument, Defendants have put forward what they claim are forty instances of variations on the expression "I'm just trying to make my mama proud," in various pop songs released prior to the 2018 release of 2Chainz's Composition.  Dkt. No. 26 at 3-6.  This evidence is not properly before the Court at the motion to dismiss phase.  In the first place, while this evidence may be appropriate for the Court to consider at the summary judgment phase, it does not go to the sufficiency of the complaint as a matter of law.  *But see Migos Touring*, 420 F. Supp. 3d at 207 (granting a motion to dismiss where the defendants put forth other examples of the phrase "walk it like I talk it" used in rap and hip-hop songs prior to the release of the plaintiff's work).  Furthermore, even if the evidence were properly before the Court, the fact that the phrase had been used in prior compositions does not necessarily resolve the case as a matter of law.  As the Supreme Court held in *Feist Publications*, a phrase is copyrightable as long as it was originally and independently derived.  499 U.S. at 345-46; *see also Alfred Bell & Co. v. Catalda Fine Arts*, 191 F.2d 99, 103 (2d Cir. 1951) ("[T]he doctrine of anticipation . . . does not apply to copyrights. . . .  The 'author' is entitled to a copyright if he independently contrived a work completely identical with what went before.").

Plaintiff's expression has no original features such as mingling of languages or a twist on a traditional saying, much less originality in the word choice or order.

Plaintiff argues alternatively that the Court should look to the "combination of elements" in the Subject Composition to find infringement.  *See Griffin v. Sheeran*, 351 F. Supp. 3d 492, 499 (S.D.N.Y. 2019) ("[W]e are principally guided 'by comparing the contested design's total concept and overall feel with that of the allegedly infringed work.'" (quoting *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 133 (2d Cir. 2003))).  But Plaintiff's "combination of elements" are unconnected with the allegedly infringed "I'm just tryna make my momma proud" lyric.  Instead, they are just a list of minor (and unprotectable) similarities between the Subject Composition and 2Chainz's Composition, including that: (1) the opening note or chord of the compositions are played on an organ; (2) the time signature; and (3) that the music videos for both compositions include a spoken word introduction.  These elements are not a combination at all and none of them, alone or in combination, is protectable.  Time signatures are among the most basic building blocks of music and are generally not copyrightable.  *See* John R. Autry, *Toward a Definition of Striking Similarity in Infringement Actions for Copyrighted Musical Works*, 10 J. Intell. Prop. L. 113, 137-38 (2002) ("Time signature is extremely generic and leaves little room for artistic choices by the composer."); *Allen v. Walt Disney Prods.*, 41 F. Supp. 134, 138 (S.D.N.Y. 1941) (stating that the Court did "not place much reliance" on the fact that two compositions were both written in 3/4 time).  Similarly, the choice of a particular instrument is not copyrightable; there is a limited universe of instruments to choose from in composing music.  Slugga's choice of an organ for the opening note or chord does not give him a right to withdraw that instrumentation from the public domain.  Finally, the references to the music video are irrelevant—according to the complaint, Slugga

17

registered a copyright for a sound recording of the song, not for the music video.  He alleges infringement of the sound recording, not the video.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to close the motion at Dkt. No. 25.  In light of the Court's finding that there are no actionable similarities between the two compositions as a matter of law, amendment would be futile and the dismissal of the complaint is with prejudice.  *See, e.g.*, *Kaye v. Cartoon Network Inc.*, 297 F. Supp. 3d 362, 371 (S.D.N.Y. 2017) ("[T]he finding of a lack of substantial similarity turns on the works themselves and not on the artfulness or sufficiency of the pleading."); *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 338 (S.D.N.Y. 2010) (denying leave to amend where there was "no additional substantive information [plaintiff] could offer to cure the deficient pleadings with respect to her . . . claim").  The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: August 16, 2021
      New York, New York                     _____
                                              LEWIS J. LIMAN
                               United States District Judge